IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff-Respondent, )<br>)<br>vs. )<br>)<br>KARIEM RAINEY, )<br>)<br>Defendant-Movant. ) | Case No. 21 C 5370 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On October 19, 2020, following Kariem Rainey's guilty plea to a four-count superseding information, the Court sentenced him to a 228-month term of imprisonment. Rainey has filed a petition under 28 U.S.C. § 2255 asking the Court to vacate the sentence, arguing that he received ineffective assistance of counsel. Neither side has requested an evidentiary hearing. For the reasons stated below, the Court grants Rainey's motion.

### Background

**A. The charges and the disposition**

In July 2020, Rainey pled guilty to violations of 21 U.S.C. § 841(a)(1) (count one); 18 U.S.C. § 924(c) (count two); 18 U.S.C. § 922(g) (count three); and 21 U.S.C. § 841(a)(1) (count four). Counts 1, 2, and 3 concerned narcotics and firearms possession and trafficking activities in May 2019. Count 4 concerned additional narcotics trafficking activities in August 2019 while Rainey was out on bond following his arrest and

indictment for the May 2019 conduct.

Rainey pled guilty pursuant to a plea agreement. On count 1, the parties agreed that the base offense level was 30 but agreed to disagree on whether the offense level should be increased by two levels under U.S.S.G. § 2D1.1(b)(12), the so-called "stash house" enhancement. "The parties did not contemplate any further enhancements for Count One." Govt.'s Resp. to § 2255 Pet. at 2. On count 2, the parties agreed that the Court was required to impose a mandatory minimum sentence of five years to be served consecutive to any other sentence imposed. On count 3, the parties agreed that the base offense level was 14 but agreed to disagree on whether the offense level should be increased by two levels under U.S.S.G. § 2K2.1(1)(A) on the basis that the offense involved three firearms. On count 4, the parties agreed that the base offense level was 16, that it should be increased by two levels under U.S.S.G § 3B1.1(c) due to Rainey's leadership role in the offense, and that it should be increased by an additional three levels because Rainey committed the offense while on pretrial release for another offense. The parties agreed to disagree on whether the offense level should be increased by an additional two levels under U.S.S.G. § 2D1.1(b)(16)(E), the criminal livelihood enhancement.

The plea agreement also set forth a proposed grouping scheme for purposes of applying the Sentencing Guidelines, which the Court ultimately adopted. Specifically, the parties agreed that counts 1 and 3 should be grouped together (group one) but that counts 2 (group two) and 4 (group three) should not be grouped with counts 1 and 3. *See* U.S.S.G. §§ 3D1.1(b)(1), 3D1.2, and 5G1.2(a). Counts 2 and 4 could not grouped with counts 1 and 3 because count 2 required a mandatory minimum of five years,

consecutive to the sentence imposed for count 1; count 4 required a sentence consecutive to the sentences on the other counts because Rainey committed that offense while on pretrial release. See 18 U.S.C. § 3147. Under this grouping scheme, the plea agreement set forth a final offense level of 32 and a criminal history category of III, which yielded an advisory sentencing range of 151-188 months' imprisonment, a consecutive sentence of some amount on count four, and a mandatory consecutive five-year sentence on count two.

      The Probation Office proposed a different grouping scheme in the presentence report. Probation proposed to group together counts 1, 3, and 4 because they all involved drug quantities that ordinarily would be added together as part of a single group. Under this grouping scheme, Probation opined that, based on a final offense level of 41 and a criminal history category of III, Rainey's advisory sentencing range was 360 months' imprisonment to life, plus a consecutive sentence of some amount on count four and a consecutive five-year sentence on count two. Grouping the offenses in this way, however, led to the incongruous result of increasing the guideline range significantly due to the effective application to *both* drug offenses of enhancements that were, in fact, applicable only to count 4.

      As the government stated in its sentencing memorandum, "considering that one goal of grouping is to prevent 'closely intertwined' offenses from creating unwarranted increases to the guidelines—it is unusual in this case that grouping the Counts One and Four under the PSR's approach results in a considerably higher offense level than treating them separately." Govt.'s Sentencing Mem. at 12. The parties further advocated for the grouping scheme set forth in the plea agreement because the

increased offense level generated by Probation's proposed grouping scheme arose not from an increase in the total combined drug quantity between the two counts, but rather from the application of enhancements—some of which, as previously stated, would not apply to every count if the counts were not grouped.

For this reason, and because count 4 required a consecutive sentence, the parties proposed to decouple count 4 from counts 1 and 3.

The error in the application of the Sentencing Guidelines that occurred in this case arises out of the difference between the two proposed grouping schemes and what is fairly called their muddled application at sentencing.

Consistent with its position in the plea agreement, at the October 2020 sentencing hearing, the government advocated for the application of two distinct two-level enhancements under the Guidelines: the U.S.S.G. § 2D1.1(b)(12) "stash house" enhancement and the U.S.S.G. § 2D1.1(b)(16)(E) criminal livelihood enhancement. As set forth in the plea agreement, the government asked to apply the stash house enhancement to count 1 and the criminal livelihood enhancement to count 4, and Rainey opposed the application of both enhancements. But contrary to its stated position in the plea agreement, the government also asked the Court to apply the criminal livelihood enhancement to count 1:

> AUSA CATIZONE: There is one other clarification that I discussed with Mr. Clancy earlier, and I didn't catch when I was doing the sentencing memo, is that I think the livelihood enhancement applies not just to Count 4, but also to the grouped counts of 1 and 3. So in my memorandum, I said that the offense level is 32, and I think that, you know, if this is applied to Count 1, the correct offense level would go up to 34.

*Id*. at 12.

A prerequisite to the imposition of the criminal livelihood enhancement, however,

4

is that the defendant received a two-level enhancement under U.S.S.G. § 3B1.1, that is, an aggravating role enhancement.[1] And no such enhancement applied to count 1; indeed, in the plea agreement, the parties agreed that the aggravating role enhancement applied only to count 4. Defense counsel did not point out the government's error, and the Court did not catch it on its own. Rather, the Court adopted the government's request to apply the criminal livelihood enhancement to count 1. In doing so, the Court erred.

In sum, the intent or at least the effect of separating counts 1 and 4 in the grouping scheme was a lower offense level. But this grouping scheme was part of what led the Court to erroneously apply the criminal livelihood enhancement to count 1. As a result of this error, the Court found the offense level to be 34, not 32. Again, defense counsel did not object:

> THE COURT: So if it stayed right there, so it would be 34. Let's just put acceptance of responsibility to the side for a moment, the criminal history category is 3. That would mean that for -- that would mean it would be 188 to 235. *Am I doing that right?*
>
> AUSA CATIZONE: That's my calculation, your Honor, as well.

*Id.* at 25 (emphasis added).

> THE COURT: Okay. Mr. Clancy, what would you like to say about the grouping issue?
>
> MR. CLANCY: Judge, I agree with your analysis of it and the government's position in their memo, that in this case, I think in a strict reading of the rules, that probation is probably right, but that in this case, I believe that our calculations as contemplated in the plea agreement are correct.

---

[1] The plain text of U.S.S.G. § 2D1.1(b)(16)(E) states: "*If the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors*: . . . (E) the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood, increase by **2** levels. *Id.* (italics added).

5

*Id*. at 27.

> THE COURT: So that means Counts 1, 3, and 4 are grouped. 2 is not. Total offense level is 34. I'm giving Mr. Rainey credit for acceptance of responsibility. I don't know if that means -- well, the government didn't make the motion, so it means only two levels, not three. So that means the 34 goes down to 32, not 31, which means that on those counts, the range is 151 to 188. And then there's the mandatory five-year consecutive for Count 2. If anybody thinks I did the math wrong just now, tell me.
>
> AUSA CATIZONE: I would just say I think your Honor said that Counts 1, 3, and 4 group. I think you meant to say Counts 1 and 3 group and Count 4 does not. If I --
>
> THE COURT: You are correct. I'm sorry. You're absolutely correct. And thank you for correcting me. 1 and 3 group; 4 does not. 1 and 3 group; 4 does not, right.

*Id.* at 32.

The Court sentenced Rainey to a 228-month prison term. Specifically, the Court imposed sentences of 160 months on count 1, 60 months on count 2 to be served consecutively to the sentence on count 1, and eight months on count 4 to be served consecutively to the sentences on counts 1 and 2. A concurrent sentence of 120 months was imposed on count 3. The 160-month sentence on count 1 was within the advisory range as the Court had miscalculated it. But it was above the advisory range if the Guidelines offense level had been calculated accurately.

About five weeks after the sentencing hearing, on November 18, 2020, the Probation Office issued a statement of correction to the presentence report. The statement flagged the error in the offense level calculation the Court had used. The Court then scheduled a status hearing to discuss the point. On November 23, 2020, a telephonic status hearing was held in which the parties agreed that the correct advisory guideline range for the conduct underlying count 1 was 121 to 151 months, not the 151

6

to 188 months range the Court had found at sentencing. Because the time in which a notice of appeal could be filed had lapsed, Rainey's only remaining path to relief was to file a section 2255 motion, which he did on October 8, 2021. At the status hearing, the Court stated that it would make no determination whether it would have imposed a different sentence had it adopted the correct, lower advisory range.

## Discussion

Under 28 U.S.C. § 2255, a court may vacate, set aside, or correct a sentence imposed in violation of the laws of the United States or otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under section 2255 is appropriate "only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently resulted in the complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks omitted). Relief is not available under section 2255 for errors in sentencing guidelines calculations unless the error involved a violation of constitutional rights. *Hawkins v. United States*, 724 F.3d 915, 916 (7th Cir. 2013).

Rainey's claim arises under the Sixth Amendment, as he argues that his trial counsel, Michael Clancy, provided ineffective assistance of counsel. To prevail, Rainey must meet the two-part test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, he must show that his counsel's performance "fell below an objective standard of reasonableness" and that the deficient conduct caused him to suffer prejudice. *Id*. at 687–88. To show prejudice, Rainey must show that "there is a reasonable probability that but for his counsel's errors, the outcome of the proceeding would have been different." *Shannon v. Hepp*, 27 F.4th 1258, 1268 (7th Cir.

7

2022).

As previously stated, the government, Rainey, and the Probation Office are all in agreement on what the correct advisory range for count 1 should have been. They contend that, after a two-level increase for the stash house enhancement and a two-level reduction for acceptance of responsibility, the correct offense level for count 1 is Level 30, and the resulting advisory sentencing range is 121 to 151 months,[2] not the 151 to 188 month range that the Court applied. The Court agrees with the parties that the offense level calculation it used was erroneous, as already described. The remaining guideline determinations were correct.

The question before the Court is whether the Sentencing Guidelines application error is attributable to ineffective assistance on the part of defense counsel. The Court concludes the answer is yes.

Rainey contends, and the Court agrees, that his trial counsel's performance fell below the objective standard of reasonableness when he failed to object to the imposition of the two-level criminal livelihood enhancement on count 1. Because Rainey had not received an aggravating role adjustment for the conduct in count 1 pursuant to § 3B1.1, which is a prerequisite to imposition of the criminal livelihood enhancement, that enhancement could not properly be applied under the express terms of the Guidelines. Thus Rainey's counsel should have objected to the government's advocacy for this enhancement and the Court's application of it. Counsel defaulted on

---

[2] All parties agreed at sentencing, and still agree, that Rainey's criminal history points were calculated correctly and placed him in criminal history category III.

his professional obligation to Rainey by failing to do so.[3]  *See Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021) ("Sentencing advocacy, during both plea negotiations and before a district court, is in most cases the most important task of a federal defender.  Understanding how to interpret the Guidelines and making guideline arguments are core competencies of federal defense counsel."); *see also*, *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance."); *Cates v. United States*, 882 F.3d 731, 736 (7th Cir. 2018) (defense counsel is expected to know the law and "a mistake of law is deficient performance.").

It is no answer to this that the Court did not itself catch the error.  Though the Court regrets its failure to do so, judges do not always catch an advocate's mistakes—in this case, the error on the part of the government in advocating for the enhancement.  That's a good part of the reason why defense counsel is there in the first place.

The government correctly notes that reasonable strategic judgements cannot be considered objectively deficient under *Strickland*.  *See Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001).  But defense counsel's failure to catch this error and make a timely objection cannot possibly be characterized as a strategic decision.  Indeed, attorney Clancy conceded during the post-sentencing status hearing that the criminal livelihood enhancement should not have been applied to count 1.  (The official transcript of that hearing has not yet been prepared; the Court consulted the unofficial

---

[3] Though defense counsel did make substantive arguments opposing the enhancement being applied to count 4 on the grounds that Rainey was being financially supported by his domestic partner, he did not object to its technical application to count 1 whatsoever.

"rough" version). But counsel made no attempt to correct the error, and by the time it was discovered by the Probation Office, the deadline to appeal the judgment had passed.

Rainey has also established that he was prejudiced by his counsel's ineffectiveness as required under the second part of the *Strickland* test. It is beyond dispute that a Court imposing a sentence must consider the correct advisory guideline range. 18 U.S.C. § 3553(a)(4). Thus, an erroneous sentencing guideline range determination can establish prejudice, even when the difference between the ranges is not all that great. *Glover v. United States*, 551 U.S. 198, 203 (2001) (abrogating Seventh Circuit precedent that a minor guideline range error of six to twelve months was not prejudicial). If the Court had been made aware of the error at the sentencing hearing, it would have inquired further, and it likely would have applied the correct offense level calculation.

The government contends that Rainey must establish that he would have received a lighter sentence but for defense counsel's errors. But all that Rainey is required to show at this point is a reasonable probability of a different outcome, and the Court's reliance on an incorrectly elevated guidelines range is sufficient to meet that requirement. *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) ("[W]hen a defendant shows that the district court used an incorrect range, he should not be barred from relief on appeal simply because there is no other evidence that the sentencing outcome would have been different had the correct range been used."); *id.* ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a

10

different outcome."). Rainey has made the necessary showing.

In sum, Rainey's trial counsel rendered ineffective assistance in failing to timely object to the government's advocacy for, and the Court's use of, an incorrect sentencing guidelines calculation. Rainey has shown prejudice because the Court applied an erroneously high advisory sentencing range and also because the Court imposed a sentence on count 1 that was above the high end of the correct guidelines range. Rainey is therefore entitled to relief under section 2255.[4]

## Conclusion

For the reasons stated above, the Court grants defendant Kariem Rainey's section 2255 motion [dkt. no. 1]. The Clerk is directed to enter judgment granting Rainey's motion and is separately directed to enter an order in Case No. 19 CR 410 vacating the judgment in that case, which was entered on the docket on October 22, 2020. The Clerk is also directed to set Case No. 19 CR 410 for a telephonic status hearing on April 10, 2023 at 9:15 a.m. so that the Court can discuss with counsel the logistics of returning Mr. Rainey to this district for resentencing. Mr. Rainey's counsel is directed to promptly communicate the Court's ruling to him.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 3, 2023

---

[4] In a footnote at the end of its response, the government mentions the possibility that the concurrent sentence doctrine could be applied to Rainey's situation given his Indiana state court conviction and resulting thirty-year concurrent sentence. Under the concurrent sentence doctrine, a court "may decline to consider a challenge to the length of a sentence if the challenged sentence is shorter than another valid and concurrent sentence." *United States v. Harris*, 51 F.4th 705, 721 (7th Cir. 2022). But the government also concedes that it "is not confident that it can make a harmless error argument . . . ." Govt's Resp. at 16 n. 2. Given this concession, there is no basis for the Court to consider the issue.